No. 15-6002

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

PATRICIA FOLEY-HINNEN
*Petitioner*,

v.

GOVERNMENT ACCOUNTABILITY OFFICE,
*Respondent*.

---

Appeal from the Government Accountability Office,
Personnel Appeals Board No. 11-03

---

# Petitioner's Corrected Reply Brief

---

Williams & Rhodes, LLP
Marisa L. Williams
Attorneys at Law
7887 E. Belleview Ave., Suite 1100
Englewood, CO 80111
(303) 220-0303
(303) 840-7370 (fax)
Attorney for Petitioner
Patricia Foley-Hinnen

December 9, 2015

Oral Argument Not Requested

TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... ii

RESPONSE TO GAO'S STATEMENT OF ISSUES................................................... 1

RESPONSE TO GAO'S STATEMENT OF FACTS.................................................... 1

ARGUMENT........................................................................................................ 2

I. Ms. Foley-Hinnen's Retaliatory Reassignment Claim Must be Remanded Because the PAB Failed to Follow the Law in Granting Summary Judgment........................................ 2

II. Ms. Foley-Hinnen's Retaliatory Denial of Detail Claim Must be Remanded for Hearing Because Because the PAB Failed to Follow the Law in Granting Summary Judgment............................................................................................. 18

III. Ms. Foley-Hinnen's Retaliation Claims Must be Remanded Because GAO's PAB Denied her Due Process of Law............................................................................ 22

CONCLUSION AND RELIEF REQUESTED............................................................ 24

CERTIFICATES OF SERVICE AND COMPLIANCE............................................... 25

TABLE OF AUTHORITIES

-

CASES

*Abbott Laboratories v. United States*,
573 F.3d 1327 (Fed. Cir. 2009)........................................................................ 23

*Adeyemi v. Dist. of Columbia*,
525 F.3d 1222 (D.C. Cir. 2008)........................................................................ 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................ 8, 9

*Brady v. Office of Sergeant at Arms*,
520 F. 3d 490 (D.C. Cir. 2008)........................................................................ 2

*Cade v. Astrue*,
2014 U.S. Dist. LEXIS 128612 (D.S.C. Sept. 15, 2014)................................. 15

*Clark County School Dist. v. Breeden*,
532 U.S. 268 (2001)........................................................................................ 7, 8

*Ellis v. Georgetown Univ. Hosp.*,
723 F. Supp. 2d 42 (D.D.C. 2010)................................................................... 10

*Gose v. U.S. Postal Service*,
451 F.3d 831 (Fed. Cir. 2006)......................................................................... 23

*Holcomb v. Powell*,
433 F.3d 889 (D.C. Cir. 2006)......................................................................... 10

*Jones v. Bernanke*,
557 F.3d 670 (D.C. Cir. 2009)......................................................................... 10

*Kwan v. Andalex Group*,
737 F.3d 834 (2nd Cir. 2013)........................................................................... 9, 15

*Lathram v. Snow*,
336 F.3d 1085 (D.C. Cir. 2003)........................................................................ 10

*Plotke v. White*,
405 F.3d 1092 (10th Cir. 2005)........................................................................ 20

*Reeves v. Sanderson Plumbing Products, Inc.*,
530 U.S. 133 (2000)........................................................................................ 10

*Roberts v. Separators, Inc.*,
172 F. 3d 448 (7th Cir. 1999)...................................................................... 11, 12

*Rojas v. Roman Catholic Diocese of Rochester*,
660 F. 3d 98 (2nd Cir. 2011)............................................................................ 17

*Schnabel v. Abramson*,
232 F.3d 83 (2000)..................................................................................... 11, 12

*U.S. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448 (7th Cir. 2005)................................................... 7

*Williams v. Dodaro*,
806 F. Supp. 2d 246 (D.D.C. 2011)............................................................... 2, 10

## REGULATIONS

4 C.F.R. § 27.1.................................................................................................... 23

5 C.F.R. § 1200.3(b)............................................................................................ 24

**Petitioner's Response to GAO's Statement of Issues**

Ms. Foley-Hinnen does not agree with the manner in which the Agency describes the issues on appeal. While the reasons for her disagreement will be set forth below in the Argument, even GAO's summary description of the issues is inaccurate. *See* Brief of Respondent U.S. Government Accountability Office (hereinafter "Brief"), pp. 9-10. Specifically, Ms. Foley-Hinnen challenged not only her reassignment to the Agency's ASM team, but to the weapons side of ASM. *See, e.g.* A130, #24, A133 #30; A482-83. Likewise, Ms. Foley-Hinnen did not challenge GAO's eventual agreement that she could work at the State Department. Brief, p. 10. Rather, she complained because GAO denied her request for a detail to the State Department, which would have allowed her to remain on the Agency's rolls and continue accruing her benefits (even if State reimbursed GAO for her salary). [A138, #45]

**Petitioner's Response to GAO's Statement of Facts**

Due to the limited space available to her in the Reply, and in an effort to avoid unnecessary repetition, Ms. Foley-Hinnen will address the Agency's misstatements of fact as necessary in the Argument.

## ARGUMENT

### I. Ms. Foley-Hinnen's Retaliatory Reassignment Claim Must be Remanded Because the PAB Failed to Follow the Law in Granting Summary Judgment.

#### A. Ms. Foley-Hinnen Established Nexus.

As it did before the PAB, GAO continues to argue that Ms. Foley-Hinnen failed to establish a *prima facie* case because she did not demonstrate a nexus between any of her protected activities and her reassignment to ASM. Brief, p. 23. That argument was misplaced below and it remains irrelevant on appeal. As the D.C. Circuit explained in *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008), once the employer has asserted a non-discriminatory reason for an adverse action, the court need not, *and should not*, decide whether the employee made a *prima facie* case. The court described such an analysis as "a largely unnecessary sideshow" at the summary judgment stage of a case. *Id.* And while some of the same evidence may prove relevant at the summary judgment stage, the issue of whether a plaintiff made a *prima facie* case is not. *See also, Williams v. Dodaro*, 806 F. Supp. 2d 246, 256 (D.D.C. 2011).

Turning to the merits of GAO's nexus argument, the lynchpin of the

entire argument relies upon a single erroneous conclusion: that Mr. Brew's decision to assign Ms. Foley-Hinnen to ASM was final in April 2001. Brief, p. 25. However, Mr. Brew – in his own words – described this decision as only preliminary. In 2002, when he was first called upon to describe the employee reassignment process, Mr. Brew said that Ms. Foley-Hinnen had not selected either NRE or ASM in the preference survey,[1] he believed the NRE team was fully staffed and ASM needed staff, and "[t]herefore, she was *preliminarily* assigned to the ASM team." Emphasis added. [A834] Mr. Brew then went on to describe the reassignment as preliminary a second time:

> *After preliminary assignments* were made for individuals by Mr. Gebicke (headquarters-based staff) and me (field-based staff) with the assistance of Mr. Perez and Ms. McDaniel, we met with the Chief Operating Officer (Gene Dodaro) and the Chief Mission Support Officer (Sallyanne Harper) to review each case and obtain final placement. Once the final placement was made, we informed the gaining and losing team managing directors who had the opportunity to appeal to Mr. Dodaro and Ms. Harper.

[A834, last paragraph]

While GAO acknowledges that Ms. Foley-Hinnen has a long history of protected activity (Brief, pp. 23-24), in arguing a lack of nexus between those

[1] Mr. Brew also erred in testifying that Petitioner did not indicate she wanted to be placed in NRE during the survey. *See, e.g.* A130, #23; A301, #9.

activities and the April 2001 preliminary reassignment to ASM, the Agency selectively ignores Ms. Foley-Hinnen's multiple protected activities occurring before that decision. Instead, GAO focusing only on some of her activities that occurred *after* April 2001. However, as Ms. Foley-Hinnen described in her discovery responses [A634]:

> In March 2000, I was interviewed by a GAO attorney regarding the discrimination and reprisal claims filed by Sandra Davis against Brew and Solomon. On March 14, 2000, I testified on behalf of Davis at a deposition in her discrimination case. In October and December of 2000, I was again interview by a GAO attorney regarding the discrimination and reprisal claims filed by Davis.

In addition, GAO dismisses Ms. Foley-Hinnen's direct complaints to Mr. Brew about discrimination over the years[2] because she "didn't need to have conversations with [Brew] very often." Brief, pp. 24-25. But in doing so, GAO ignores Petitioner's contemporaneous, sworn testimony that she raised those concerns "[p]robably the majority of the time that I had conversations with [Brew and Solomon.] I didn't need to have conversations with them very

---

[2]She repeatedly complained to Mr. Brew between 1992 and 2002 that being paid less than the males she supervised violated the EPA. [A632] She also complained to Mr. Brew, up until 2001, that the office assignment policy was discriminatory. [A633]

often, but when I had conversations with them, it always came up." [A1391, p. 119].

Likewise, in January or February 2001, Petitioner told Ms. McDaniel (whom Mr. Brew said assisted him with reviewing employee job preferences) that she could not work in the weapons group and had previously moved out of that group because it was a hostile work environment." [A916, #28]

Thus, even if we assume that Mr. Brew's April 2001 preliminary decision was in fact the final decision reassigning Ms. Foley-Hinnen to ASM, the record evidence reveals Petitioner engaged in a variety of protected activities in the months immediately preceding that decision. Ms. Foley-Hinnen maintains, however, that the evidence proves the Agency's final decision to reassign her to ASM was not made until November 2001, when Mr. Solomon advised her of the same upon her return from traveling to Ms. Davis' hearing in Washington, D.C.

As part of its nexus argument, GAO wrongly accuses Ms. Foley-Hinnen of belatedly fabricating her argument that the April 2001 decision was preliminary for this appeal. Brief, p. 27. That is not true. In her description of the facts on appeal to the PAB, Ms. Foley-Hinnen averred: "In April, 2001, GAO advised Ms. Foley-Hinnen that *it planned* to place her in the ASM group."

[A456, n. 11] Likewise, when she filed her Reply in Support of the Opening Brief below, Ms. Foley-Hinnen explicitly cited Mr. Brew's sworn testimony from 2002 wherein he described his role in the reassignment process, explaining that his job was to review the employee placement survey information and make a *preliminary reassignment*. She also included his testimony that he subsequently met with COO Dodaro and Ms. Harper to review the information and make *final* placement decisions. [A834].

More incredibly, however, *GAO itself* previously described the April 2001 decision as preliminary. In the Memorandum of Law in Support of Motion for Summary Judgment filed with the PAB, that Agency wrote: "Tom Brew ... led the analysis of the employee preference survey as it related to field office employees. A *preliminary* assignment was made for each survey participant and then was presented to then Chief Operating Officer Gene Dodaro and then Chief Financial Officer/Chief Administrative Officer Sallyanne Harper for a *final* decision." Emphasis added. [A203]

Obviously then, Ms. Foley-Hinnen did not, belatedly or otherwise, "manufacture genuine issues of material fact through self-serving and unsupported 'admissions' materially different from positions taken in the

past."[3] Accordingly, GAO's reliance on *U.S. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 466 (7th Cir. 2005) is also misplaced.

While the Agency has apparently forgotten that it initially characterized the April 2001 reassignment as preliminary, there is no question that Ms. Foley-Hinnen has consistently described the decision in this manner. Further, however, two of the four PAB panel members agreed with her that Mr. Brew's own testimony established the April 2001 reassignment decision was preliminary, and the members faulted the other two panel members for disregarding this evidence. *See* Dissent, p. 16 and n. 12.

Ultimately, the Agency argues that even if Ms. Foley-Hinnen correctly described the April 2001 decision as preliminary, the U.S. Supreme Court "has expressly rejected the theory" upon which she relies "that the relevant date in a retaliation claim is the date the decision was 'finalized.'" Brief, p. 28.
In support of this argument, GAO cites *Clark County School Dist. v. Breeden*,

---

[3]GAO also misstates the record in arguing the only reason Petitioner did not report to ASM in April was that she needed to complete an NRE job before moving. Brief, p. 27 (*citing* A850). The document says nothing of the sort, and on the contrary, it shows Ms. Foley-Hinnen believed she was already assigned to NRE when Mr. Brew proposed to reassign her to ASM.

532 U.S. 268, 272 (2001) for the proposition that the relevant date for a retaliation claim is not the date of the final personnel action, but the date the action is proposed.

The case is inapposite for several reasons. First, in *Breeden* the plaintiff's only evidence for causation was proximity in time. That is not the case here. In addition to proximity in time, Ms. Foley-Hinnen also produced evidence of pretext by showing inconsistencies in various Agency managers' testimony. This evidence allows a factfinder to infer retaliatory motive. Second, and also unlike *Breeden* (where plaintiff had no choice but to claim the final decision to reassign her showed proximity in time), Ms. Foley-Hinnen adduced evidence of proximity in time for both the preliminary and final decisions to reassign her.

Finally, Petitioner does not agree that the Supreme Court's discussion about the evidentiary value of the employer's final decision to reassign the plaintiff, as opposed to its preliminary thoughts of doing so, constitutes the holding of *Breeden*.

### B. Ms. Foley-Hinnen Adduced Sufficient Evidence of Pretext to Withstand the Motion for Summary Judgment.

Citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), GAO

argues that once it articulated legitimate, non-retaliatory reasons for the reassignment, Petitioner was required to produce "concrete evidence" that would allow a reasonable factfinder to return a verdict of retaliation in order to survive summary judgment. Brief, pp. 31-32. That is not, however, the holding of *Liberty Lobby*. Rather, the reference to "concrete evidence" appears in the Supreme Court's discussion of the heightened evidentiary standard applicable in conspiracy and libel cases. As the Supreme Court went on to explain, it is the substantive law applicable to the legal claim at issue which drives the inquiry as to whether the non-moving party has raised a genuine issue of material fact. *Id*.

Ms. Foley-Hinnen alleged retaliation in violation of Title VII, and in such cases, a plaintiff can meet her ultimate evidentiary burden by showing that her employer's proffered legitimate reason is a pretext for discrimination. *See, e.g.*, *Adeyemi v. Dist. of Columbia,* 525 F.3d 1222, 1226 (D.C. Cir. 2008). As explained in *Kwan v. Andalex Group*, 737 F.3d 834 (2nd Cir. 2013), a plaintiff may demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.

*Id.*, 846. *See also, Williams v. Dodaro*, 806 F. Supp. 2d 246, 259-60 (D.D.C. 2011); *Jones v. Bernanke,* 557 F.3d 670, 678 (D.C. Cir. 2009).

In *Lathram v. Snow,* 336 F.3d 1085, 1088-89 (D.C. Cir. 2003), the court explained that in discrimination cases "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive" (citing and quoting *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150 (2000)).

When coupled with her evidence regarding proximity in time, Ms. Foley-Hinnen's pretext evidence more than satisfies her burden on summary judgment. *See, e.g*., *Holcomb v. Powell,* 433 F.3d 889, 903 (D.C. Cir. 2006) (finding that the plaintiff's repeated protected activity during the period of time she also suffered adverse actions demonstrated sufficient temporal proximity to allow an inference of retaliatory motive); *Ellis v. Georgetown Univ. Hosp.,* 723 F. Supp. 2d 42, 53 (D.D.C. 2010) (considering temporal proximity along with additional evidence).

In short, a plaintiff in a Title VII retaliation case does not need "concrete evidence." She only needs enough evidence to allow a reasonable juror to infer the employer had a retaliatory motive. Ms. Foley-Hinnen adduced

sufficient evidence to withstand summary judgment.

GAO also argues a reasonable factfinder could not conclude Mr. Brew was motivated by retaliation because, four years earlier, he removed Ms. Foley-Hinnen from her hostile work environment. Brief, p. 33. This fact, the Agency claims, entitles GAO to "a strong presumption against retaliation." *Id., citing Schnabel v. Abramson*, 232 F.3d 83, 91 (2000); *Roberts v. Separators, Inc.,* 172 F. 3d 448 (7th Cir. 1999). Petitioner does not agree with GAO's broad description of the presumption. But even if the Agency were entitled to such a presumption, common sense alone suggests that Mr. Brew's opinion of Ms. Foley-Hinnen may very well have changed during the four years following his decision in 1997.

The evidence in this case reveals that between 1997 and 2001, Ms. Foley-Hinnen became increasingly more vocal in her opposition to what she perceived was discriminatory practices in pay and office assignments. By 2000 she was involved in the EEO process as a witness in two of her female co-workers' discrimination complaints. In January or February 2001, she told Mr. Brew's assistant that the only place she absolutely could not work was ASM's weapons program, based in part on her experience that it was a hostile work environment. And when Mr. Brew announced his preliminary decision

to reassign Ms. Foley-Hinnen in April 2001, she told him that appeared to be retaliation for her protected activities.

Indeed, it would be very surprising if these activities did *not* negatively impact Mr. Brew's opinion of her. In any event, *Schnabel* and *Roberts* involved age discrimination claims where the very basis for the discrimination is an immutable characteristic – age. The same is not true for retaliation claims, where intervening events may completely change the employer's opinion of an employee.

**1. Ms. Foley-Hinnen Did Not Have to Prove NRE Needed Additional Staff to Survive Summary Judgment.**

While the staffing level of NRE is a relevant issue, GAO places too great a burden on Petitioner when it argues she had to demonstrate that NRE needed additional staff in April 2001. Brief, p. 35. Specifically, one of Mr. Brew's initial excuses for not reassigning Ms. Foley-Hinnen to NRE was that the group was full. [A834] In order to demonstrate pretext, Ms. Foley-Hinnen proffered evidence casting doubt on Mr. Brew's excuse. But she was not required to completely disprove Mr. Brew's reason, *i.e.*, prove NRE needed more staff. She only had to offer enough evidence to challenge the veracity of Mr. Brew's claim. Ms. Foley-Hinnen satisfied that burden.

Contrary to Mr. Brew's claim that NRE was full, Petitioner submitted evidence showing that he placed two of her coworkers into NRE *at the very same time* he reassigned her to ASM. [A847] Only a month later, in December 2001, Mr. Brew placed Ms. Davis in NRE,[4] and he added two more employees to NRE after that. *Id.* Mr. Brew's actions speak louder than his words and those actions unequivocally contradict his professed reason for sending Ms. Foley-Hinnen to ASM; that NRE was full.

Further, Mr. Robinson's (NRE's manager) testimony undermines Mr. Brew's claim that NRE was full. While Mr. Robinson suggested the group was full at the beginning of his testimony, he continued his statement with an explanation that even if he was fully staffed, it was a "soft cap" he could have exceeded by perhaps one person if he got permission.[5] [A1006, p. 31:7-9] And it is undisputed that GAO added *five* employees, not just one. Mr. Brew's testimony cannot be reconciled with this undisputed fact.

---

[4]GAO contends Mr. Brew's decision to reassign Ms. Davis to NRE (the team she wanted) within a month of the hearing in her discrimination case demonstrates he did not harbor retaliatory animus. Brief, p. 37. Petitioner disagrees because the timing of his decision could also suggest he was motivated by a desire to appear fair to Ms. Davis while her case was pending.

[5]Also, Mr. Robinson did not testify he "did not request permission to exceed" the staffing cap, he said he *would not* have made the request, further demonstrating that Mr. Brew never asked him to do so. *Id.*

Accordingly, a reasonable factfinder could easily conclude Mr. Brew was not telling the truth when he claimed he reassigned Ms. Foley-Hinnen to ASM because NRE was full. Petitioner was entitled to any inferences that could be drawn in her favor at the summary judgment stage.

Finally, GAO contends that there is no competent record evidence to support her assertion that of the 18 staff members who were placed in NRE and ASM in Denver, she was the only employee involuntarily reassigned to a group she did not request. Brief, p. 38, n. 12. However, GAO authored the report Ms. Foley-Hinnen relied upon in forming this conclusion. Specifically, in response to the investigator's request during Petitioner's EEO case, GAO prepared and submitted a report describing when and where the Denver employees were reassigned to and from NRE and ASM. [A132-33; 638-39 (wherein Ms. Foley-Hinnen describes that she relied on p. 774 of the Report of Investigation[6]).] The document, which speaks for itself, clearly evidences that Ms. Foley-Hinnen was the only employee in Denver who was involuntarily reassigned to ASM.

In summary, the issue of whether NRE was full is ultimately a question of disputed fact. Ms. Foley-Hinnen was not required at the summary judgment

[6]Page 774 of the Report of Investigation is found at A847.

stage to completely disprove Mr. Brew's excuse by proving NRE needed additional staff. She only needed to prove pretext "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered. . . reasons. . ." *Cade v. Astrue*, 2014 U.S. Dist. LEXIS 128612, 20-21 (D.S.C. Sept. 15, 2014) (quoting *Kwan*, *supra*, 737 F. 3d at 845-46). Ms. Foley-Hinnen made this showing of pretext.

### 2. GAO's Second Excuse, that Mr. Robinson Opposed Ms. Foley-Hinnen's Assignment to NRE, is an Agency Construct.

The second supposedly legitimate reason for reassigning Ms. Foley-Hinnen to ASM was that Mr. Robinson did not want her in NRE due to performance issues. The Agency first argued this excuse in the Motion for Summary Judgment, when it claimed that Mr. Robinson opposed Petitioner's placement in NRE *during the preference survey process.*[7] [A204]. But upon reviewing all the evidence, Petitioner determined there was no evidence actually linking Mr. Robinson's opinion to the reassignment decision. *See* Opening Brief, pp. 16-18.

Thus, while Mr. Robinson may well have concluded he did not want Ms.

[7]The Administrative Judge accepted this argument at face value and found in the Initial Decision that Mr. Robinson's opposition to her placement in NRE was a legitimate reason for GAO's decision.

Foley-Hinnen assigned to NRE, he did not – as Mr. Brew claimed – convey that opinion to Mr. Brew before Mr. Brew made the decision to reassign Ms. Foley-Hinnen.

Incredibly, GAO tries to blame Ms. Foley-Hinnen for its decision to offer Mr. Robinson's opinion as a legitimate business reason for the reassignment. Brief, pp. 39-40. But on each and every occasion when Ms. Foley-Hinnen referenced her understanding of Mr. Robinson's role in her reassignment, she was clearly describing what she had been told by Mr. Brew and others. *See, e.g.,* A917, #38 (complaint she filed in 2002); A132,#27 (Amended Petition). And when she referenced Mr. Robinson' role in the reassignment in her discovery responses, she said he "supposedly" told these things to Mr. Brew. [A628]

Ms. Foley-Hinnen's only mistake in this regard is that she *believed Mr. Brew* when he told her Mr. Robinson was one of the reasons she was assigned to ASM. But her belief does not make his statement a fact. She never said she witnessed the claimed discussion between Mr. Brew and Mr. Robinson, nor did she say she had first-hand knowledge that Robinson told Mr. Brew his opinion of her. She merely described what she *thought* was one of the reasons for the reassignment based on the limited evidence she had at the

time.

GAO argues that Ms. Foley-Hinnen's expressed understanding of Mr. Robinson's role in the reassignment constitutes a judicial admission and thus actual evidence of the Agency's legitimate business reason. This argument is specious. The only people who could be held to such an admission are those who would have had first-hand knowledge of the events, Mr. Robinson or Mr. Brew. And the cases the Agency cites for this argument are inapposite for precisely this reason. *See, e.g.*, *Rojas v. Roman Catholic Diocese of Rochester*, 660 F. 3d 98, 105-06 (2nd Cir. 2011) (plaintiff's admissions were premised on her first-hand knowledge).

### 3. Petitioner Did Not Have to Prove that "Civilian" ASM Work was Available.

One aspect of Ms. Foley-Hinnen's involuntary reassignment claim is that GAO refused to assign Ms. Foley-Hinnen to the civilian side of ASM. Contrary to the Agency's argument that she did not raise this issue with the PAB, Petitioner has consistently alleged placing her on the weapons side of ASM was especially retaliatory, given her history of objecting to such assignments. *See, e.g.,* Amended Petition (A130-31#24); Opening Brief to PAB (483).

GAO never responded to this aspect of her claim. The Agency never

identified any reason, let alone a legitimate business reason, for not allowing her to work on the civilian side of ASM. Before the PAB, Ms. Foley-Hinnen argued the Agency's silence meant it did not dispute her claim. [A483] Again, GAO did not challenge her contention. Accordingly, the Board should have construed this evidence in her favor, as pretext. Ms. Foley-Hinnen was not obliged to disprove a reason the Agency failed to offer.

## II. Ms. Foley-Hinnen's Retaliatory Denial of Detail Claim Must be Remanded Because the PAB Failed to Follow the Law in Granting Summary Judgment.

GAO lists several reasons justifying its decision to deny Ms. Foley-Hinnen's request for a detail to the State Department. Brief, p. 47. At first blush, these reasons seem perfectly reasonable. The problem, however, is that GAO did not articulate these reasons until some ten years after it denied her request. *See, e.g.*, A1205 (Mr. Walker's Deposition on May 21, 2012) and A810 (Mr. Dodaro's deposition on May 18, 2012). What GAO originally offered as its legitimate business reason was Mr. Walker's statement on January 7, 2002: "we have had a standing policy position for some time that we do not do details to the Executive Branch for a variety of reasons." A1026. As described in her Opening Brief, Petition demonstrated that virtually every part of Mr. Walker's statement was not true. *See* Opening Brief, pp. 27-29.

She was entitled to an inference of retaliation based on this showing of pretext.

GAO contends Ms. Foley-Hinnen could not withstand summary judgment because she did not allege Mr. Walker himself retaliated against her. Brief, pp. 48-49. Once again, the Agency is relying on Ms. Foley-Hinnen's understanding of the evidence at a time when discovery was not yet completed. As she pointed out on the very next page of her testimony, Mr. Walker and Mr. Dodaro had never been interviewed before she filed her petition – despite her repeated requests for those interviews. [A1390, p. 81:18-21] And even at the time of her deposition (in 2012), she still did not know what anybody had said. *Id.*, at lines 14-15.

Ms. Foley-Hinnen properly recognized and expressed the possibility that their testimony might "indicate that the reality was different than I understood it." *Id.*, lines 15-17.

### A. Ms. Foley-Hinnen Introduced Sufficient Evidence for a Factfinder to Conclude that the Executive Committee Knew About her Protected Activity.

Petitioner acknowledges that she needed to offer some evidence that at least one of the decision-makers had some knowledge of her prior protected activity. She did not, however, have to conclusively prove that knowledge. At

the summary judgment stage she only needed to adduce enough evidence that so that a reasonable jury *could* conclude that – more likely than not – a decision-maker had such knowledge. *Plotke v. White*, 405 F.3d 1092, 110 (10th Cir. 2005). Despite GAO's insistence to the contrary, Ms. Foley-Hinnen made that showing.

The Agency argues that Appellant relied on a statement she took out of context from Mr. Hoskin's testimony to demonstrate the Executive Committee knew about her protected activity. According to GAO, Mr. Hoskins made the statement: "I'm almost certain that whatever information I had about Ms. Hinnen's request, I would have shared with the Executive Committee" in response to a question specifically limited to the subject of reimbursable details. However, as any litigator knows, just because an interrogator asks a specific question does not mean the deponent will give a limited response. On the contrary, witnesses frequently volunteer more information than requested.

In this case, Mr. Hoskins did not limit his response to sharing only his knowledge about reimburseable details. He volunteered more by saying he was certain he shared "*whatever information* I had about Ms. Hinnen's request." Emphasis added. And the evidence is undisputed that Mr. Hoskins

knew about Ms. Foley's protected activities, as well as the fact she wanted the detail so she would not have to return to a hostile work environment, before the Executive Committed ruled on her detail request. [730, p. 281-731, p. 285]

Further, GAO's argument ignores Mr. Dodaro's corroborating testimony showing that Mr. Hoskins did indeed tell the Executive Committee everything he knew about Ms. Foley-Hinnen's detail request. Specifically, Mr. Dodaro testified that he knew Mr. Hoskins spoke with Ms. Foley-Hinnen about her detail request and Mr. Hoskins attended the Executive Committee meeting *specifically because* the committee wanted to be sure they "understood what had transpired up to the point." [A808, p. 31]

As Mr. Dodaro described, Mr. Hoskins not only gave the factual background for the detail request, but he also gave his own perspective on the subject. *Id.* p. 32. Between Mr. Hoskin's testimony and and Mr. Dodaro's testimony, it is clear that a reasonable fact-finder could conclude that the Executive Committee knew about Ms. Foley-Hinnen's protected activity before it decided not to allow her to leave on the detail.

Finally, the Agency continues to argue that Mr. Walker did not contradict himself when explaining why he denied Ms. Foley-Hinnen's detail request. But the evidence is clear. Whether he called it a "policy" or a

"practice," whether it was written or not, Mr. Walker ultimately admitted that the Agency had *never before* taken a position on Executive Branch details until Ms. Foley-Hinnen made her request. [A1205, p. 18]

He also admitted "I do not recall having any discussion about it until the policy issue was brought up to the Executive Committee as a result of Ms. Hinnen's request." *Id.* Further, Mr. Dodaro testified the Executive Committee actually developed that policy together when the met to discuss Ms. Foley-Hinnen's detail request. [A809, pp. 34-37] In short, both Mr. Walker's own testimony and that of his COO Mr. Dodaro, reveal Mr. Walker's original justification for denying the detail was false.

Ultimately, Ms. Foley-Hinnen produced more than enough evidence to establish that the Agency's reason for denying the detail was a pretext for retaliation. She was therefore entitled to an inference of retaliation, and a hearing on the merits of her claim.

## III. Ms. Foley-Hinnen's Retaliation Claims Must be Remanded Because GAO's PAB denied her Due Process.

Ms. Foley-Hinnen submits that the PAB denied her due process because the four member panel considering her appeal divided 2-2. The PAB's regulations *do not* state that in the case of a tie, the Initial Decision is affirmed.

4 C.F.R. § 27.1. They are completely silent on the subject of a tie. Instead, the regulation only provides that "a majority of a quorum may act for the Board." *Id.* Based on the plain language of the regulation, the PAB did not have the majority required to issue a final decision in this case.

Despite the plain language of the regulation, the Chair of the PAB declared a majority of the panel favored summary judgment because the Administrative Judge's Initial Decision constituted a third vote and thus a majority. Petitioner respectfully submits this was an abuse of discretion.

GAO argues the Chair's action was proper because the regulation is ambiguous and his interpretation of the ambiguity is entitled to deference. Brief, p. 63 (*citing, e.g., Abbott Laboratories v. United States*, 573 F. 3d 1327, 1330 (Fed. Cir. 2009). Petitioner agrees that where the wording of a regulation is ambiguous, the Agency is afforded deference. But the regulation at issue is not ambiguous; it is silent. And "an Agency cannot establish the existence and application of an interpretation by after-the-fact testimony of agency officials regarding what they had apparently thought but failed to articulate at the relevant time." *See Gose v. U.S. Postal Service*, 451 F. 3d 831, 840 (Fed. Cir. 2006).

The Agency also contends the Chair's decision is consistent with the

manner in which the Merit Systems Protection Board (MSPB) handles split decisions. Brief, p. 64. However, unlike the PAB, the MSPB expressly anticipated and resolved the dilemma presented by a tie on appeal. *See* 5 C.F.R. §1200.3(b). "When due to a vacancy, recusal or other reasons, the Board members are unable to decide any case by majority vote, the decision, recommendation or order under review shall be deemed the final decision or order of the Board. The Chairman of the Board may direct the issuance of an order consistent with this paragraph."

The PAB apparently failed to anticipate the possibility of a tie. It certainly made no provision for the situation. Petitioner respectfully submits this is not a matter of ambiguity subject to interpretation. Rather, it appears to be a recent and convenient interpretation that will allow the PAB to avoid hearing a case that is now very stale.

## CONCLUSION

For the reasons set forth above, Ms. Foley-Hinnen respectfully requests that this Court remand her case to the PAB with instruction that she be afforded a hearing on her retaliation claims.

Respectfully submitted this 9th day of December, 2015.

*_s/Marisa Williams*____________
Counsel for Petitioner Foley-Hinnen
Williams & Rhodes LLP
7887 E. Belleview Ave. #1100
Englewood, CO 80111
303-220-0303 (phone)
303-840-7370 (fax)
mlw@williamsandrhodes.com

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 9th day of December, 2015, I filed and served a copy of the foregoing Corrected Reply Brief electronically on all parties via the Court's electronic filing service.

*_s/Marisa Williams*________

**CERTIFICATE OF COMPLIANCE**

As Fed. R. App. P. 32 (a)(7)( C)requires, I certify that this brief is spaced proportionally and contains five thousand one hundred ninety-nine words. I relied upon a word processor to obtain the count, specifically WordPerfect X6 software.

I further certify that the information on this form is true and correct to the best of my knowledge and belief, formed after reasonable inquiry.

*_s/Marisa Williams*____________